UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
COREY GORDON, JOSEPH CADORE, ALLISON
MATHLIN, JOSEPH MINICOZZI, and RICHARD
BILLINGSLEY,

                          Plaintiffs,

   -against-

APS CONTRACTORS INC. and WILLIAM DOE,

                         Defendants.
------------------------------------------------------------------x

MEMORANDUM & ORDER

No. 21-CV-00259-WFK-JRC

JAMES R. CHO, United States Magistrate Judge:

## Introduction

Plaintiffs Corey Gordon, Joseph Cadore, Allison Mathlin, Joseph Minicozzi, and Richard Billingsley (collectively, "plaintiffs") assert claims in this action against their former employer, defendant APS Contractors Inc. ("APS"), and their former supervisor, William Doe,[1] (collectively, "defendants") for violations of federal, state, and local civil rights laws. *See generally* Compl., Dkt. 2. Due to defendant APS's failure to appear in or otherwise defend the action, the Clerk of the Court noted its default on June 22, 2021. Dkt. 10.

On November 12, 2021, plaintiffs moved for entry of default judgment. Dkt. 11. On February 18, 2022, United States District Judge William F. Kuntz, II held a default judgment hearing, at which plaintiffs' counsel was directed to submit a proposed default judgment and a proposed order setting forth what was to be submitted and referred to this Court for review. *See*

---

[1] It does not appear from the record that plaintiffs have served defendant William Doe with the summons and Complaint, nor was a certificate of default entered as to this defendant. Plaintiffs' memorandum of law briefs only the issues of default and liability as to the corporate defendant APS, and this Court does not address any of the allegations raised against the individual defendant.

Minute Entry dated February 18, 2022. On April 8, 2022, plaintiffs filed a proposed default judgment and proposed order. Dkt. 14. On May 5, 2022, Judge Kuntz referred plaintiffs' motion to this Court for a report and recommendation. *See* Order dated May 5, 2022, Dkt. 15.

On June 15, 2022, this Court denied plaintiffs' first motion for default judgment for non-compliance with the Local Civil Rules and granted leave to refile their motion in a manner that complied with all applicable rules. *See* Order dated June 15, 2022. On July 15, 2022, plaintiffs refiled their motion for default judgment, Dkt. 16 ("second motion for default judgment"), and on December 2, 2022, Judge Kuntz referred plaintiffs' second motion for default judgment to the undersigned for a report and recommendation, Dkt. 17. On January 10, 2023, this Court held a hearing on plaintiffs' second motion for default judgment; defendant APS failed to appear for the conference. *See* Minute Entry dated January 10, 2023.

For the reasons set forth below, the Court denies plaintiffs' second motion for default judgment without prejudice and grants plaintiffs' alternative request for leave to file an amended complaint.[2]

**Relevant Factual Background and Procedural History**

All plaintiffs are skilled "in building construction and roofing." Compl. ¶ 14. Plaintiffs "find work through a Union hall in which representatives place Plaintiffs on a list, and when a project becomes available, the Local 8 Union notifies them of a job opening." *Id.* ¶ 13. From

---

[2] The undersigned has the pretrial authority under 28 U.S.C. § 636(b) and Rule 72(a) of the Federal Rules of Civil Procedure to deny plaintiffs' second motion for default judgment where, as here, the Court denies the motion without prejudice and with leave to file an amended complaint, and the denial of the motion is not dispositive of any party's claims or defenses. *See Zuniga v. Newmark Wood Working Grp. Inc.*, No. 20 Civ. 2464, 2022 WL 3446331, at *4 n.1 (E.D.N.Y. Aug. 17, 2022); *see also Field v. Exponential Wealth Inc.*, No. 21 Civ. 1990, 2023 WL 2263120, at *7 (S.D.N.Y. Feb. 27, 2023) (denial of motion for default judgment without prejudice is within magistrate judge's authority to order, rather than recommend).

2

approximately June 2019 to October 2019, plaintiffs were employed to perform construction and roofing work by defendant APS, located "at or near the Breukelen Houses worksite [] on Williams Street, between Stanley Avenue and Farragut Road, in Brooklyn New York 11236." [3] *Id*. ¶ 16.

Plaintiffs allege that defendants "promoted a Spanish language speaking only workplace . . . to purposely undermine [plaintiffs'] ability to perform [their] duties." *Id*. ¶¶ 24, 38, 45, 50, 54. Plaintiffs are not able to speak or understand Spanish, and they claim that they were treated differently than employees who had "Spanish as their natural tongue." *Id*. Throughout their employment, plaintiffs "were subjected to and made victim to a harassing work environment manifested by national origin and racial discrimination, and related unlawfully motivated adverse employment actions in the Workplace." *Id*. ¶ 17. When plaintiffs complained of unequal treatment, defendants allegedly retaliated against them. *Id*. ¶ 18.

Plaintiffs further allege that defendants deprived them of "continued skilled employment" that is "routinely granted upon seniority and skill considerations," and that defendants "engaged in a persistent pattern of removing the plaintiffs from skilled positions, and reassigning their skilled positions to Spanish-speaking Latino origin employees." *Id*. ¶¶ 19, 20. Since the skilled tasks were occupied by Spanish-speaking employees, plaintiffs were reassigned to "unskilled job details," which became pre-textual justification for "their eventual layoff." *Id*. ¶ 21. Plaintiffs allege that the "field's custom and practice" is to terminate "skilled union members as unproductive" when they are relegated to unskilled work. *Id*.

---

[3] Plaintiffs Gordon, Cadore, Mathlin, and Billingsley were all employed from approximately June 2019 to October 2019. Compl. ¶¶ 23, 37, 48, 52, 57. Plaintiff Minicozzi was employed from approximately July 2019 to October 2019. *Id*. ¶¶ 44, 57.

3

Corey Gordon

Plaintiff Gordon is a black male and resides in Nassau County. *Id*. ¶ 3. Gordon alleges that from the start of his employment with defendants in June 2019, defendants undermined his "ability to perform his duties as a roofer" because he was "unable to speak or understand Spanish," and that "preferable and different treatment [was given] to Latino employees having Spanish as their natural tongue." *Id*. ¶ 24.

An example of this different treatment can be seen in the way that defendants provided instructions to Gordon. Blueprints, which "inform roofers of the daily work to be completed," were posted at the workplace. *Id*. ¶ 25. These blueprints were posted in English; however, supervisors gave supplemental instructions, "which detailed and modified the blueprints," in Spanish. *Id*. As Gordon neither speaks nor understands Spanish, he "inevitably [] performed his duties in a manner that did not comport to the detailed information communicated in the Spanish spoken supplemental instructions." *Id*. ¶ 26. On one such occasion when Gordon was not provided with English instructions, Gordon "secured the installation inconsistent to the project's required installation method." *Id*. ¶ 28. For his error, Gordon was "scolded and ridiculed." *Id*. Gordon was "further instructed [] to leave if he could not perform the job as instructed in Spanish," and he was later assigned to an unskilled position. *Id*.

Gordon requested that instructions be given to him in English on several occasions. *Id*. ¶ 31. One time when Gordon requested English instruction, his supervisor "commented that Gordon was out of the ordinary because 'he never saw a black person that wasn't lazy.'" *Id*. ¶ 32. Gordon had a "significant amount of training" in a "particular liquid water proofing method." *Id*. ¶ 33. Despite his extensive training, Gordon was never assigned to work on liquid water proofing. *Id*. Further, the training for water proofing was only given in Spanish, and the

4

"Plaintiffs' requests for training in English were denied." *Id*. ¶¶ 34, 35.

### Joseph Cadore

Plaintiff Cadore is a black male who resides in Kings County. *Id*. ¶ 4. Cadore alleges that he "was denied equal opportunity for job assignments because of his national origin." *Id*. ¶ 55. Cadore further alleges that "despite his skill set and seniority being significantly superior to many of the Latino Spanish speaking employees," he was "virtually always assigned to trash collection." *Id*. ¶ 56.

### Allison Mathlin

Plaintiff Mathlin is a black male who resides in Kings County. *Id*. ¶ 5. Mathlin alleges that he was assigned "to portions of the Workplace that were inactive with the purpose of minimizing [his] productivity." *Id*. ¶ 51. "After multiple hours of being inactive," defendants assigned Mathlin to "trash collection, an unskilled job assignment, thereby effectuating the Supervisor's intent to minimize contribution by non-Spanish speaking employees." *Id*.

### Joseph Minicozzi

Plaintiff Minicozzi is a white male who resides in Nassau County. *Id*. ¶ 6. Minicozzi alleges discrimination based on his national origin and race. *Id*. ¶ 43. Minicozzi was instructed by his supervisor to "teach the Spanish-[speaking] employees the skilled job of roof-rolling." *Id*. ¶ 47. However, when Minicozzi informed his supervisor that he could speak only English, the supervisor directed Minicozzi "to do so anyway." *Id*. After failing to perform the task as instructed, defendants assigned Minicozzi "the unskilled job of trash collection in retaliation for being unable to communicate with employees who only spoke Spanish." *Id*.

### Richard Billingsley

Plaintiff Billingsley is a black male who resides in Bronx County. *Id*. ¶ 7. Billingsley

5

alleges that he "was denied the opportunity to participate in the skilled assignment of roof-rolling because the training and instructions were only given to employees in Spanish." *Id.* ¶ 39. Billingsley's request to receive the training in English was denied.[4] *Id.* ¶ 40. Billingsley further alleges that he was replaced with Spanish-speaking employees during a roof flashing job, after he had finished cutting metal pieces but prior to installation. *Id.* ¶ 42.

\* \* \*

On March 2, 2020, plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC"), and on January 14, 2021, the EEOC issued a right to sue letter to plaintiffs. Compl. ¶¶ 10, 11.[5] On January 21, 2021, plaintiffs commenced this action asserting claims of discrimination based on national origin and race pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, Section 296 of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and Section 8-107(4) *et seq.* of the New York City Human Rights Law ("NYCHRL").[6] *See* Compl. at 1. Plaintiffs seek to recover damages for past and future lost wages, emotional distress, attorneys' fees, and punitive damages. *Id.* ¶ 65.

After being served with the summons and the Complaint, defendant APS failed to appear,

---

[4] Plaintiffs allege that Miniciozzi was instructed to teach the Spanish-speaking employees roof-rolling, but he was unable to do so effectively because of the language barrier. *See* Compl. ¶ 47. Yet, plaintiffs also allege that Billingsley was denied the opportunity to participate in roof-rolling because he did not speak Spanish and his request to receive training in English was denied. *See id.* ¶¶ 39-40. These factual allegations appear to be in conflict.

[5] Although the Complaint states that the right to sue letter is attached thereto, *see* Compl. ¶ 11, plaintiffs failed to include the right to sue letter with the Complaint.

[6] Plaintiffs also asserted claims under New York common law for intentional and negligent infliction of emotional distress, but plaintiffs withdrew these claims in their second motion for default judgment. *See* Pls.' Mem., Dkt. 16-9, at 1 n.1.

answer, or otherwise respond to the Complaint. Accordingly, plaintiffs sought, and the Clerk of Court entered, a certificate of default. *See* Dkts. 8, 10. Plaintiffs filed a motion for default judgment on November 12, 2021, Dkt. 11, which this Court denied on June 15, 2022. *See* Order dated June 15, 2022. Plaintiffs filed their second motion for default judgment on July 15, 2022. Dkt. 16. Judge Kuntz referred plaintiffs' second motion to the undersigned for a report and recommendation. *See* Order Referring Mot. dated December 2, 2022, Dkt. 17.

## Discussion

As set forth below, this Court has identified a number of deficiencies in plaintiffs' Complaint and second motion for default judgment that require denial of the second motion for default judgment. However, the Court, as requested by plaintiffs in the alternative, will afford plaintiffs the opportunity to file an amended complaint.

**I.      Local Civil Rule 55.2**

In its June 15, 2022 Order, this Court reminded plaintiffs that they must, pursuant to Local Civil Rule 55.2(c), "mail a copy of their motion and all appended papers to defendants 'at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)' and file proof of such mailing on ECF." Order dated June 15, 2022. Indeed, Local Civil Rule 55.2(c) requires that "all papers submitted to the Court pursuant to Local Civil Rule [55.2(b)] shall *simultaneously* be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual). Proof of such mailing shall be filed with the Court." Local Civ. R. 55.2(c) (emphasis added).

Plaintiffs nevertheless failed to file proof of service of the second motion for default judgment on defendant APS or to otherwise indicate that the second motion had been mailed to

7

APS. That failure alone warrants denial of the instant motion for default judgment. *See Castillo v. Chapines LLC*, No. 22-CV-203, 2022 WL 17253521, at *2 (E.D.N.Y. Nov. 28, 2022); *Tenemaza v. Eagle Masonry Corp.*, No. 20 Civ. 452, 2021 WL 8317120, at *4 (E.D.N.Y. July 22, 2021) (collecting cases); *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043, 2019 WL 1450746, at *7 (E.D.N.Y. Jan. 28, 2019).[7]

## II. Liability

Having reviewed plaintiffs' Complaint, the Court has identified a number of deficiencies that further warrant denial of plaintiffs' second motion for default judgment.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," a plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2). When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations omitted); *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18-CV-5923, 2020 WL 2832766, at *3 (S.D.N.Y. May 31, 2020) ("[B]ecause

---

[7] Not only have plaintiffs failed to comply with the Local Rules and the Court's June 15, 2022 Order, plaintiffs also failed to comply with a subsequent Court order. After the Court held a hearing on January 10, 2023, it directed plaintiffs to "serve a copy of this Order on defendants and file proof of service on ECF." Minute Entry dated January 10, 2023. Plaintiffs failed to comply with the January 10, 2023 Order.

a party in default does not admit conclusions of law, it is incumbent upon the Court to consider whether the plaintiff has pleaded facts sufficient to establish the defendant's liability with respect to each cause of action.") (citation and internal quotation marks omitted).

In the context of a motion for default judgment, "if a plaintiff fails to state a claim, a court cannot enter default judgment in the plaintiff's favor . . . and must instead dismiss the claim." *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2022 WL 1266209, at *4 (S.D.N.Y Apr. 28, 2022). Regardless of whether defendant has failed to appear, "[a] default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant." *Id*. (quoting *Pac. M. Int'l Corp. v. Raman Int'l Gems*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012)).

### A. Plaintiffs' Title VII Claim

Plaintiffs allege that defendants unlawfully discriminated against them on the basis of their race and national origin under Title VII, the NYSHRL, and the NYCHRL, *see* Compl. at 1 ("Nature of the Case"), by subjecting them to a hostile work environment, which resulted in "unlawfully motivated adverse employment actions." *See* Compl. ¶ 17. Plaintiffs also allege that defendants violated Title VII, the NYSHRL, and the NYCHRL, by retaliating against them for complaining about the harassment. *Id.* ¶ 18. Specifically, plaintiffs allege that defendants "engaged in a persistent pattern of removing the Plaintiffs from skilled positions, and reassigning their skilled positions to Spanish-speaking Latino origin employees." *Id*. ¶ 20. Once reassigned to non-skilled positions, plaintiffs were laid off under the practice of terminating subordinate, unskilled roles. *Id*. ¶ 21.

#### 1. Status of APS as an Employer Under Title VII

Title VII provides that "[i]t shall be an unlawful employment practice for an employer

9

. . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [] or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) ("the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief"). An employer is not subject to the provisions of Title VII, unless the employer has at least fifteen employees. *See Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 195 (2d Cir. 2005); *Kuhnmuench v. Phenix Pierre, LLC*, No. 16-CV-9162, 2018 WL 1357383, at *3 (S.D.N.Y. Mar. 15, 2018).

       Here, plaintiffs fail to allege in the Complaint whether defendant APS satisfies this requirement. Because plaintiffs have failed to plead a required element of a Title VII discrimination claim, they are not entitled to default judgment on their Title VII claims. *See Aponte v. Clinton St. Pizza Inc.*, No. 20-CV-2037, 2021 WL 1961646, at *4 (S.D.N.Y. May 17, 2021) (denying motion for default judgment on Title VII claim for failing to allege "essential element" of number of employees); *Vera v. Donado Law Firm*, No. 17-CV-03123, 2019 WL 3306117, at *6 (S.D.N.Y. June 19, 2019) (denying motion for default judgment under Title VII because, *inter alia*, the plaintiff did not plead that the defendant "had at least 15 employees"), *adopted by*, 2019 WL 3302607 (S.D.N.Y. July 23, 2019); *Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *14 (E.D.N.Y. Mar. 15, 2019) (same), *adopted by*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019); *Johnson v. Allick*, No. 18-CV-7171, 2019 WL 569106, at *4 (E.D.N.Y. Feb. 12, 2019) (*sua sponte* order dismissing Title VII claim where plaintiff failed to "allege[] any facts that suggest that [defendant] employed fifteen or

10

more employees at any given time").

In the event plaintiffs fail to plead adequately their federal Title VII claims -- the only claims[8] for which plaintiffs have alleged that this Court has original jurisdiction (*see* Compl. ¶ 1; 28 U.S.C. § 1367(c)(3))[9] – this Court may decline to exercise supplemental jurisdiction over plaintiffs' remaining claims brought under New York State and New York City law. *See Whitcombe v. Lanza Corp.*, No. 20-CV-04835, 2022 WL 597438, at *7 (S.D.N.Y. Feb. 28, 2022) (declining to exercise supplemental jurisdiction over state law claims after dismissing Title VII claim for failure to allege the requisite number of employees); *Aponte*, 2021 WL 1961646, at *5 (on motion for default judgment, declining to exercise supplemental jurisdiction over NYCHRL claims after dismissing Title VII claim for failure to allege number of employees); *Castaneda*, 2019 WL 5694118, at *14 (on motion for default judgment, recommending that court decline supplemental jurisdiction over the NYSHRL and the NYCHRL claims); *Kuhnmuench*, 2018 WL 1357383, at *5 (declining to exercise supplemental jurisdiction over the NYSHRL and the NYCHRL claims).

---

[8] The Complaint contains one reference to 42 U.S.C. § 1981. *See* Compl. ¶ 67 (Count 1: For Discrimination under Federal Title VII). Generally, "[m]ere passing reference to constitutional amendments and statutes is insufficient to state a claim under such provisions." *Gawlik v. Quiros*, Civil No. 3:21-CV-01549, 2022 WL 2065042, at *2 n.4 (D. Conn. June 8, 2022). It is unclear whether plaintiffs are attempting to analogize Title VII claims and Section 1981 claims because the standards for relief are identical. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989). However, these claims are "separate, distinct, and independent." *Vernon v. Port Auth. of N.Y. & N.J.*, 220 F. Supp. 2d 223, 233 (S.D.N.Y. 2002) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974)). For plaintiffs to recover under Section 1981, plaintiffs must allege discrimination under Section 1981 in the Complaint. Further, Section 1981 does not apply to national origin discrimination. *See Village of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016).

[9] Plaintiffs do not allege the existence of diversity jurisdiction, nor have they alleged facts sufficient to establish diversity jurisdiction.

## 2. Plaintiffs Fail to Identify Their National Origin

"Employment discrimination claims [alleging adverse employment action on the basis of race and national origin] brought under Title VII, [Section] 1981, and the NYSHRL are analyzed pursuant to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)." *Quintero v. Angels of the World, Inc.*, No. 19-CV-6126, 2021 WL 4464123, at *5 (E.D.N.Y. Sept. 10, 2021) (quoting *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464, 2019 WL 4464393, at *4 (S.D.N.Y. Sept. 18, 2019)), *adopted by*, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021). Under this framework, "plaintiff[s] bringing a claim for disparate treatment under Title VII 'must first establish a *prima facie* case of discrimination by showing: (1) [they] belonged to a protected class, (2) [were] qualified for the position [they] held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent." *Abada v. Delta Air Lines, Inc.*, No. 19-CV-3903, 2020 WL 7481326, at *2 (E.D.N.Y. Dec. 18, 2020) (quoting *Fanelli v. New York*, 200 F. Supp. 3d 363, 370 (E.D.N.Y. 2016)), *aff'd*, 2022 WL 894704 (2d Cir. Mar. 28, 2022). "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination . . ., it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotations and citations omitted).

Here, plaintiffs fail to plead adequately a national origin discrimination claim because they fail to identify their national origin. *See Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020) (affirming dismissal of national origin discrimination claim where plaintiff "alleges that he is fluent in French because of his national origin" but failed to identify his national origin); *Durand v. Excelsior Care Grp. LLC*, No. 19-CV-2810, 2020 WL 7246437,

12

at *5 (E.D.N.Y. Dec. 9, 2020) (dismissing plaintiffs' national origin discrimination claim because plaintiffs failed to "identify their national origin"). Plaintiffs' allegations of discrimination based on national origin fail to state a claim.

### 3. Plaintiffs' Inability to Speak Spanish is Not a Proxy for National Origin or Race Discrimination

Plaintiffs have not plausibly alleged that discrimination based on race or national origin was a motivating factor in defendants' actions. *See Littlejohn v. City of New York,* 795 F.3d 297, 307 (2d Cir. 2015) (stating that there must be "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation"); *see also Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 62 (2d Cir. 2016) (stating that, in the context of employment discrimination, to survive dismissal, a plaintiff must plausibly allege that race, color, or national origin was a motivating factor in an employment decision). Plaintiffs allege that they were treated differently than their Spanish-speaking, Latino co-workers and were terminated because of their inability to speak Spanish. However, "Title VII does not protect against discrimination on the basis of language." *Panjwani v. Jet Way Sec. & Investigations, LLC*, No. 13 Civ. 7186, 2016 WL 3675331, at *13 (E.D.N.Y. Feb. 26, 2016) (quoting *Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006)), *adopted by*, 2016 WL 3702969 (E.D.N.Y. July 7, 2016); *see also Desrosiers v. Summit Sec. Servs., Inc.*, No. 21-CV-10941, 2022 WL 13808524, at *4-*5 (S.D.N.Y. Oct. 21, 2022) ("the existence of an English language policy in the workplace" is not discriminatory); *Durand*, 2020 WL 7246437, at *6 (policy prohibiting plaintiffs from speaking Creole or French at work did not violate Title VII); *Joseph v. N. Shore Univ. Hosp.*, 473 F. App'x 34, 37 (2d Cir. 2012) (stating that under Title VII, "a policy [of] having a preference for English over all other languages is not evidence of discriminatory intent"). Unlike certain other characteristics, race, national origin and language

13

proficiency are not "inextricably bound up." *Cruz v. New Jersey*, No. 16-0703, 2022 WL 3681243, at *4 (D.N.J. Aug. 25, 2022). Indeed, people who are Latino may not speak Spanish and people who speak Spanish may not be Latino. *See id.*

To be sure, in some cases, evidence of language discrimination may be used to find national origin or race discrimination. "Critical to evaluating the propriety of a language-restriction policy under a disparate treatment theory, as in any such employment discrimination case, is whether the employer's practices reflect an intent to discriminate on the basis of the classifications protected by Title VII, including race and national origin." *Panjwani*, 2016 WL 3675331, at *13 (quoting *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612-13 (S.D.N.Y. 2009)). "In conducting this analysis, the courts consider, among other facts, whether there is evidence that the employer, in addition to [language discrimination], has exhibited other forms of racial or ethnic hostility." *Id*. (citing *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1489 (2d Cir. 1993)).

Here, plaintiffs allege that they were replaced on certain job tasks because of their inability to speak or understand Spanish. The mere fact that APS "promoted a Spanish speaking workplace" does not, by itself, plausibly allege that APS engaged in racial or national origin discrimination. For example, plaintiffs have not alleged that APS employees used language as a surrogate for discrimination based on national origin or race. "For instance, if plaintiffs 'were able to present evidence that other employees were permitted to speak in, for example, Chinese or Portuguese, but not [English], such evidence could support an inference of intentional discrimination on the basis of national origin." *Durand*, 2020 WL 7246437, at *6 n.2 (quoting *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 263 (S.D.N.Y. 2000)); *see Joseph*, 473 F. App'x at 37 (affirming summary judgment for employer where plaintiff was reprimanded

14

for speaking in her native French in violation of defendant's policy to speak English in the office, but she could not support her claim that other employees were permitted to speak Spanish in the workplace without being disciplined). In fact, the plaintiffs' Complaint contains "no allegations concerning any comment made or attitude held -- whether by Defendants or anyone else -- concerning Plaintiff's national origin." *Khwaja v. Jobs to Move America*, No. 19-CV-07070, 2021 WL 4927140, at *2 (S.D.N.Y. Mar. 26, 2021), *adopted by*, 2021 WL 3911290 (S.D.N.Y. Sept. 1, 2021); *see also Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (granting motion to dismiss claims of national-origin discrimination where plaintiffs failed to "assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner").

### B.  Aiding and Abetting Claim Under the NYCHRL (Count 8)

Plaintiffs assert claims for aiding and abetting discrimination against both named defendants under the NYCHRL (Count 8).[10] *See* Compl. ¶¶ 89-90. The statute provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

Plaintiffs cannot assert a claim for aiding and abetting against defendant APS -- a corporate entity -- under the NYCHRL. "Defendant cannot be liable as an aider and abettor under either NYCHRL or NYSHRL because Defendant's alleged participation in the conduct giving rise to the underlying violation would be the basis for just that claim -- an underlying violation of NYCHRL or NYSHRL." *Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL

---

[10] Plaintiffs also brought an aiding and abetting claim under the NYSHRL against only the individual defendant (Count 4).

15

1556402, at *6 (S.D.N.Y. May 17, 2022); *see also Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758, 2021 WL 930710, at *7 (S.D.N.Y. Mar. 11, 2021) ("[A] corporate employer cannot be liable for aiding and abetting a hostile work environment violation by its employee, because such a claim would be derivative of the primary hostile work environment claim against the corporate employer."); *Xiang v. Eagle Enters.*, No. 19 Civ. 1752, 2020 WL 248941, at *11 (S.D.N.Y. Jan. 16, 2020) (corporate defendants cannot be liable for aiding and abetting an individual's conduct); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012) ("there can be no aider-and-abettor liability as to the Corporate Defendants for aiding and abetting their own conduct," nor can they be "liable for aiding [the individual defendants] to aid their own conduct."). Because the NYCHRL does not permit aiding and abetting claims against a corporate defendant, plaintiffs fail to state a claim against defendant APS for aiding and abetting discrimination.

### III.   Failure To Address Claims in Plaintiffs' Motion

The Court notes that plaintiffs appear to have abandoned a number of their claims. In their memorandum of law in support of their second motion for default judgment, plaintiffs fail to address their retaliation claims (Counts 2, 5, and 7), aiding and abetting claims (Counts 4 and 8), and vicarious discrimination claim (Count 9). "[T]he failure to provide argument on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal." *Div. 1181 Amalgamated Transit Union v. R & C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (citation omitted). In this Court's June 15, 2022 Order, in response to plaintiffs' failure to address defendants' liability in plaintiffs' first motion for default judgment, the Court specifically warned plaintiffs "that if any subsequent memorandum of law fails to include argument relating to any of the counts in the complaint,

those counts may be deemed abandoned." Order dated June 15, 2022.

Plaintiffs' failure to address these claims in their memorandum of law in support of their second motion for default judgment serves as another basis for denying plaintiffs' motion as to these claims. *See Payamps v. M&M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *3 n.3 (E.D.N.Y. Dec. 9, 2019) (on motion for default judgment, deeming cause of action abandoned where plaintiff failed to address it in motion); *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85, 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (on default judgment motion, finding claim for injunctive relief abandoned because plaintiff did not request such relief in its motion for default judgment).

## Conclusion

For the reasons set forth above, this Court denies plaintiffs' second motion for default judgment without prejudice for failure to serve the motion and for the pleading deficiencies discussed herein. Plaintiffs have requested, in the alternative, leave to amend if the pleadings fail to state a claim. *See* Pls.' Mem., Dkt. 16-9, at 20. The Court will afford plaintiffs the opportunity to cure the various pleading defects identified by the Court. *See Sudilovskiy v. City WAV Corp.*, No. 22-CV-469, 2022 WL 4586307, at *1, *6 (E.D.N.Y. Sept. 29, 2022); *Zuniga*, 2022 WL 3446331, at *7. The Court grants plaintiffs leave, within 30 days from the date of this Memorandum and Order, to file an amended complaint. Plaintiffs shall serve a copy of this Order on defendant APS Contractors Inc. and file proof of service on ECF.

**SO ORDERED**

Dated: Brooklyn, New York
       March 20, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge
